NIELSEN MERKSAMER
    PARRINELLO GROSS & LEONI LLP
    Marguerite Mary Leoni, Esq. (S.B. No. 101696)
    Christopher E. Skinnell, Esq. (S.B. No. 227093)
    2350 Kerner Boulevard, Suite 250
San Rafael, California 94901
Telephone:  (415) 389-6800
Facsimile:   (415) 388-6874
Email: mleoni@nmgovlaw.com
Email: cskinnell@nmgovlaw.com

*Attorneys for Defendants*
PANAMA-BUENA VISTA UNION SCHOOL DISTRICT, *ET AL.*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOLORES HEURTA FOUNDATION, *et al.*,<br><br>        *Plaintiffs*,<br><br>vs.<br><br>PANAMA-BUENA VISTA UNION SCHOOL DISTRICT, *et al.*,<br><br>        *Defendants*. | Case #1:22-cv-00226-AWI-BAK<br><br>**DEFENDANTS' MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS (FRCP 12(b)(1) AND 12(c)) AND SUPPORTING MEMORANDUM**<br><br>JUDGE: Hon. Anthony W. Ishii<br><br>Date:  July 18, 2022<br>Time:  1:30 P.M.<br>Place:  Courtroom 2 |

# <u>TABLE OF CONTENTS</u>

**Page(s)**

NOTICE OF MOTIONS & MOTIONS .......................................................... 9

I.   INTRODUCTION ..................................................................................... 10

II.  FACTS ...................................................................................................... 10

III. CAUSES OF ACTION IN THE COMPLAINT ................................... 14

First Cause of Action: Violation of the Voting Rights Act of 1965 (Results Test) ........................................................................................................... 14

Second Cause of Action: Violation of the California Constitution. .................................. 16

Third Cause of Action: 14 U.S.C. § 1983 ................................................... 16

Prayer For Relief ........................................................................................... 16

IV.  STANDARD OF REVIEW ..................................................................... 17

   A.   Federal Rule of Civil Procedure 12(b)(1) (Lack of Jurisdiction) ........................... 17

   B.   Federal Rule of Civil Procedure 12(c) (Failure to State a Claim) ......................... 18

V.   ARGUMENT ............................................................................................ 19

   A.   This Case Is Moot: There Is no Longer a Live Controversy Between the Parties Admitting of Specific Relief ................................................. 19

   B.   The Court Must Dismiss the Second Cause of Action Alleging Claims Solely Under the California Constitution ................................... 23

   C.   Plaintiffs Have Failed to Allege the Foundational Elements for a Claim That the Multi-member System Violates Section 2 of the Federal Voting Rights Act ......................................................................... 24

      1.   Plaintiffs do not allege it was possible to create a trustee area in 2011 with a majority of eligible voters who were Latino ....................... 25

      2.   Plaintiffs have not alleged "trustee area-specific" facts demonstrating Latino voters are politically cohesive in Area 1 in the Multi-member System and in their demonstration trustee area ....................................... 26

      3.   Plaintiffs have not alleged "trustee area-specific" facts demonstrating the third *Thornburg v. Gingles* pre-condition, that non-Latino voters in Area 1 in the Multi-member System

and in their demonstration trustee area "usually" defeat the
Latino candidate of choice ........................................................................... 27

D.    The Second Cause of Action Fails to Allege a Claim for Voting
Discrimination Under the California Constitution Which Requires an
Allegation of Intentional Discrimination, Which Plaintiffs Have
Disavowed .............................................................................................. 27

E.    The Third Cause of Action Fails Because the Complaint Does Not
Allege a Predicate Violation of Federal Rights, as Required by 42
U.S.C. § 1983 .............................................................................................. 28

VI.  CONCLUSION ...................................................................................................... 30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Cargo Transp., Inc. v. United States,*
625 F.3d 1176 (9th Cir. 2010) ....................................................................22

*Am. Rivers v. Nat'l Marine Fisheries Serv.,*
126 F.3d 1118 (9th Cir. 1997) ...................................................................20

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n,*
997 F. Supp. 2d 1047, 1051 (D. Ariz. 2014) ...........................................23

*Arizonans for Official English v. Arizona,*
520 U.S. 43 (1997).......................................................................................19

*Armstrong v. Asselin,*
734 F.3d 984(9th Cir. 2013) ......................................................................29

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..............................................................................18, 19

*Bartlett v. Strickland,*
556 U.S. 1 (2009).................................................................................24, 25

*Bd. of Trs. of the Glazing Health & Welfare Tr. v. Chambers,*
941 F.3d 1195 (9th Cir. 2019) ...................................................................23

*Beckway v. DeShong,*
717 F. Supp. 2d 908 (N.D. Cal. 2010) ......................................................18

*Bradley v. Work,*
154 F.3d 704 (7th Cir. 1998) .....................................................................21

*Broward Citizens for Fair Dists v. Broward Cty.,*
2012 U.S. Dist. LEXIS 46828 (S.D. Fla. Apr. 3, 2012) ..........................25

*In re Burrell,*
415 F.3d 994 (9th Cir. 2005) .....................................................................19

*C.F. v. Capistrano Unified Sch. Dist.,*
647 F. Supp. 2d 1187 (C.D. Cal. 2009) ....................................................21

*Chestnut v. Merrill,*
446 F. Supp. 3d 908 (N.D. Ala. 2020)................................................20, 21

*City of Erie v. Pap's A.M.,*
529 U.S. 277 (2000)....................................................................................20

*Comm. to Protect Our Agric. Water v. Occidental Oil & Gas Corp.*,
   235 F. Supp. 3d 1132 (E.D. Cal. 2017) ................................................29

*Cooper v. Harris*,
   137 S. Ct. 1455 (2017) ..............................................................22

*Crumpton v. Gates*,
   947 F.2d 1418 (9th Cir. 1991) ......................................................28

*Dallas v. United States*,
   482 F. Supp. 183 (D.D.C. 1979) ....................................................21

*Davis-Payne v. Powers*,
   2013 U.S. Dist. LEXIS 207899 (W.D.N.Y. Apr. 15, 2013) .............................29

*In re Dynamic Random Access Memory (Dram) Antitrust Litig.*,
   516 F. Supp. 2d 1072 (N.D. Cal. 2007) .............................................18

*Galen v. County of Los Angeles*,
   477 F.3d 652 (9th Cir. 2007) .......................................................29

*Garrison v. Oracle Corp.*,
   2015 WL 1849517 (N.D. Cal. Apr. 22, 2015) ........................................18

*Herman Family Revocable Tr. v. Teddy Bear*,
   254 F.3d 802 (9th Cir. 2001) ...................................................23, 24

*Horizon Bank & Tr. Co. v. Massachusetts*,
   391 F.3d 48 (1st Cir. 2004) ........................................................20

*Hughey v. JMS Dev. Corp.*,
   78 F.3d 1523 (11th Cir. 1996) ......................................................21

*Knappenberger v. City of Phoenix*,
   566 F.3d 936 (9th Cir. 2009) .......................................................18

*Leer v. Murphy*,
   844 F.2d 628 (9th Cir. 1988) .......................................................29

*Lehrman v. New York State*,
   2019 U.S. Dist. LEXIS 175846 (C.D. Cal. Sept. 3, 2019) ............................29

*Lopez v. Lassen Dairy, Inc.*,
   2010 U.S. Dist. LEXIS 125172 (E.D. Cal. Nov. 12, 2010) ...........................23

*Montero v. AGCO Corp.*,
    19 F. Supp. 2d 1143 (E.D. Cal. 1998), aff'd, *Montero v. AGCO Corp.*, 192 F.3d
    856 (9th Cir. 1999) ..................................................................................................24

*Old Person v. Cooney*,
    230 F.3d 1113 (9th Cir. 2000) ..............................................................................26

*Ortiz v. Bd. of Supervisors*,
    107 Cal. App. 3d 866, 872, 166 Cal. Rptr. 100, 104 (1980)..................................23

*Owen Equip. & Erection Co. v. Kroger*,
    437 U.S. 365 (1978)................................................................................................19

*Perry v. Perez*,
    565 U.S. 388 (2012)................................................................................................22

*Preiser v. Newkirk*,
    422 U.S. 395 (1975)................................................................................................19

*Puerto Rican Def. Educ. Fund v. Gantt*,
    796 F. Supp. 698 (E.D.N.Y. 1992) ........................................................................20

*Romero v. Pomona*,
    883 F.2d 1418 (9th Cir. 1989) ...............................................................................25

*Ruiz v. City of Santa Maria*,
    160 F.3d 543 (9th Cir. 1998) .................................................................................20

*S. Cal. All. of Publicly Owned Treatment Works v. EPA*,
    2015 WL 2358620 (E.D. Cal. May 15, 2015) ........................................................20

*Savage v. Glendale Union High Sch.*,
    343 F.3d 1036 (9th Cir. 2003) ...............................................................................18

*St. Clair v. City of Chico*,
    880 F.2d 199 (9th Cir. 1989) .................................................................................17

*Stock W., Inc. v. Confederated Tribes of the Colville Reservation*,
    873 F.2d 1221 (9th Cir. 1989) ...............................................................................19

*Thornburg v. Gingles*,
    478 U.S. 30 (1986)............................................................................................*passim*

*Upham v. Seamon*,
    456 U.S. 37 (1982)................................................................................................22

*West v. Natchez,*
    2016 U.S. Dist. LEXIS 38775 (S.D. Miss. Mar. 24, 2016) .............................................20, 22

*White v. Lee,*
    227 F.3d 1214 (9th Cir. 2000) ......................................................................................17

*White v. Weiser,*
    412 U.S. 783 (1973)......................................................................................................22

*Winters v. Jordan,*
    2010 U.S. Dist. LEXIS 72682 (E.D. Cal. July 19, 2010) ........................................21

*Wis. Legis. v. Wis. Elections Comm'n,*
    142 S. Ct. 1245 (2022).................................................................................................27

*Wolfson v. Brammer,*
    616 F.3d 1045 (9th Cir. 2010) .....................................................................................19

**Statutes**

28 U.S.C. § 1367...............................................................................................................14, 23

42 U.S.C. § 1983.....................................................................................................................12

52 U.S.C. § 10301...................................................................................................................24

Cal. Educ. Code §§ 5019 & 5019.5 ..........................................................................11, 13, 22

Cal. Educ. Code §5020 .....................................................................................................13, 22

Cal. Educ. Code § 5021 ..........................................................................................................13

Cal. Educ. Code § 5030 ....................................................................................................10, 13

Cal. Educ. Code §§ 5322 & 5324 ...........................................................................................14

Cal. Elec. Code § 10010 ...................................................................................................12, 13

Cal. Elec. Code §§ 12262, 10509, 10510 ...............................................................................14

Cal. Gov. Code § 6250 *et seq.* ...............................................................................................29

Cal. Gov. Code § 54950 *et seq.* .............................................................................................29

Cal. Gov. Code §§ 54954.2, 54954.5, 54956.9(d)(2) & (e)(2) ...........................................12, 16

Cal. Gov. Code § 54960.1 .......................................................................................................12

MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS          CASE NO. 1:22-cv-00226-AWI-BAK
OF DEFENDANTS PANAMA-BUENA VISTA, *et al.* & SUPPORTING
MEMORANDUM          Page 7

**Other Authorities**

Federal Rule of Civil Procedure 12(h)(3) ................................................................................18, 19

Federal Rule of Civil Procedure 12(b)(1) ....................................................................................17

Federal Rule of Civil Procedure 12(c) .........................................................................................18

United States Constitution Article III ............................................................................................23

1

**NOTICE OF MOTIONS & MOTIONS**

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

     Please take notice that on Monday, July 18, 2022, at 1:30 p.m., or as soon thereafter as the

4

parties may be heard, Defendants PANAMA-BUENA VISTA UNION SCHOOL DISTRICT AND

5

BOARD OF EDUCATION OF PANAMA-BUENA VISTA UNION SCHOOL DISTRICT, *et al.*,

6

will move this Court, at the Robert E. Coyle United States Courthouse located at 2500 Tulare

7

Street, Fresno, California, 93721, Courtroom #2 (8 Floor), for an order dismissing the Complaint

8

under Federal Rule of Civil Procedure 12(b)(1), on the ground that the Court lacks subject matter

9

jurisdiction because the action is moot, and also lacks pendant jurisdiction over alleged state law

10

claims in the Second Cause of Action.

11

     Defendants will also move to dismiss and/or for judgment on the pleadings under Federal

12

Rule of Civil Procedure 12(c) on the grounds the First, Second, and Third Causes of Action in the

13

Complaint fail to state a claim upon which relief can be granted.

14

     This motion is based on the following documents: this Notice of Motion and the following

15

Points & Authorities; the Request for Judicial Notice, filed herewith ("RJN"), and accompanying

16

Declarations of Grant Herndon, Priscilla Quinn and Elynor Cherie Olgin; and all the other papers,

17

documents, or exhibits on file or to be filed in this action, and the argument to be made at any

18

hearing on the motion ordered by the Court.

19

                    Respectfully submitted,

20

Dated:  June 9, 2022             NIELSEN MERKSAMER

21

                     PARRINELLO GROSS & LEONI LLP

22

             By:   /s/    Marguerite Mary Leoni

23

                 *Attorneys for Defendants*

24

25

26

27

28

MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS      CASE NO. 1:22-cv-00226-AWI-BAK
OF DEFENDANTS PANAMA-BUENA VISTA, *et al.* & SUPPORTING
MEMORANDUM      Page 9

## I.      INTRODUCTION.

This action under Section 2 of the federal Voting Rights Act, filed in February 2022 by and on behalf of Latino voters in Defendant Panama-Buena Vista Union School District ("District" or "School District"), challenges the 2011 by-trustee area electoral system used by the District to elect the five members of its Board of Trustees from 2012 through 2020. That system had two trustee areas, one electing three trustees and the other electing two. The trustee areas were properly apportioned by population under law. Compl. ¶ 13 & Exhibit 1 ("Multi-member System"); *see* Cal. Educ. Code § 5030(b).

The Multi-member System no longer exists. It has been replaced in accordance with law by an electoral system with five trustee areas, each electing one member of the Board of Trustees by the voters in that trustee area. RJN Ex. A ("Single-member System".) The Single-member System will be used for the 2022 Board of Trustees elections and thereafter. Plaintiffs do not allege the new electoral system violates any law. Instead, Plaintiffs seek injunctive and declaratory relief with regard to the superseded Multi-member System. Their challenges to the Multi-member System no longer present a live controversy. In addition, the Complaint fails to allege a violation of federal law. This motion seeks dismissal for lack of subject matter jurisdiction or, alternatively, judgment on the pleadings in favor of Defendants.

## II.     FACTS.

The School District has five members on its Board of Trustees. Compl. ¶ 11. Before 2011, all five trustees were elected districtwide in at-large voting. Compl. ¶ 13. Since 2011, however, the District has used a "by-trustee area" electoral system with two multi-member trustee areas pursuant to Education Code § 5030(b). Candidates were required to live in a particular trustee area and were elected only by the voters in that area. Trustee Area 1 covered the eastern and southern portions of the School District, electing two trustees in the Gubernatorial election cycle; Trustee Area 2, covering the western portion of the School District, elected three trustees in the Presidential election cycle. Compl. ¶¶ 13 & 24 & Ex. 1. The populations of the trustee areas were properly apportioned according to the number of trustees each elected under the 2010 Census, the

most recent at the time the Multi-member System was designed. Compl. Ex. 1. Trustee Area 1 was more heavily Latino – 48% of the total population and 34.4% of the citizen voting age population based on the Census data available in 2011. Compl. ¶ 24 & Ex. 1. On December 14, 2011, the Kern County Committee on School District Organization approved the change from at-large voting to multi-trustee areas, as well as the area boundaries and election sequence. Compl. ¶ 25.

There were elections in the trustee areas of the Multi-member System in 2012, 2014, 2016, 2018 and 2020. Compl. ¶ 26. Trustee Area 2 held elections in 2016 in which a Latino candidate, Victor Morones, ran for one of the three seats in a field of four candidates, and narrowly lost, coming in fourth, but less than a percentage point behind the third-place winner. Compl. ¶ 51. Voters in Trustee Area 1 did not vote in the Trustee Area 2 elections.  Compl. ¶ 53. The entire District voted on statewide Propositions 51 and 58, that Plaintiffs allege posed electoral choices that affected the rights and privileges of Latinos. Proposition 51 was an initiative that authorized $9 billion in bonds for school construction and modernization. Proposition 58 repealed an earlier initiative in order to allow bilingual education in public schools. Compl. ¶ 53.

Trustee Area 1 held a contested election in 2018. There were three candidates, including the incumbent African-American trustee, Keith Wolaridge, and a Latina challenger, Elynor Cherie Olgin. RJN Ex. N & Decl. of Elynor Cherie Olgin regarding her ethnicity, see RJN at 4: 21-22 & 7:7-9. Candidate Olgin was the top vote-getter in Trustee Area 1, followed by Wolaridge. Both were elected to the Board of Trustees. RJN Ex. I.

The California Education Code requires school districts to adjust trustee area boundaries after each decennial Census if necessary to maintain substantial population equality. Each school district must complete the adjustments on or before March 1 of the year following the year in which the Census is taken. Compl. ¶ 27; Cal. Educ. Code § 5019.5. The School District was engaged in that process on January 18, 2022. Compl. ¶ 27.

On February 9, 2022, the School District received a letter from Plaintiffs' attorney herein dated February 7, 2022, asserting the School District's Multi-member System violated the California Voting Rights Act and the federal Voting Rights Act ("February 9 Letter") and

demanding establishment of a system of single-member by-trustee area elections for the Board of Trustees. Compl. ¶ 34; RJN Ex.D, . California law provides a 45-day period from receipt of such a letter for a jurisdiction to respond to the demand by passing a Resolution of Intent to establish a district-based electoral system.  During that 45-day period potential plaintiffs are prohibited from filing an action against the jurisdiction.  Cal. Elec. Code § 10010(e).

On February 18, 2022—within the statutory time prescribed—the School District posted an agenda for its upcoming regular meeting on February 22, which included an agenda item for adoption of a Resolution of Intent to replace the Multi-member System with five single-member trustee areas using by-trustee area voting. RJN Exs. B & C.   A Resolution of Intent is the first step in California's statutory process to change a jurisdiction's electoral system. Cal. Elec. Code § 10010(e)(3).

On February 22, 2022, the School District passed the Resolution of Intent to change to an electoral system with five single-member trustee areas using by-trustee area voting. RJN Ex. C. The same day, Plaintiffs filed their Complaint against the School District alleging the Multi-member System violated the Federal Voting Rights Act ("VRA"), 52 U.S.C. § 10301, the Civil Rights Act, 42 U.S.C. § 1983, and two provisions of the California Constitution, art. I, § 7(a), and art. II, § 2 (the "Action").

Plaintiffs also claim that after receiving the February 7, 2022 letter, the School District Board of Trustees met in closed session on February 8, February 10, and February 22, 2022, which meetings were not properly noticed to disclose the subject of the closed session pursuant to the Brown Act, California's regulatory scheme for open meetings for local governments. Compl. ¶¶ 35-38; Cal. Gov. Code §§ 54954.2, 54954.5, 54956.9(d)(2) & (e)(2). Plaintiffs also allege that when Plaintiffs' attorney requested documentation concerning the purpose of the closed session meetings, the documents were not provided "without delay," though they do not allege that the documentation was not received.  Compl. ¶¶ 39 & 42; Cal. Gov. Code § 54954.5(a). Without conceding a violation, Defendants took immediate action as permitted by statute to "cure and correct" the alleged violations of the Brown Act. RJN Ex. D; Cal. Gov. Code § 54960.1.

Commencing with the passage of the Resolution of Intent, Defendants engaged in an extensive public process over the course of nearly 12 weeks, as specified in California Elections Code § 10010 consisting of public outreach, public hearings, public meetings, community input and mapping, and trustee area map development to develop a proposal for a new electoral system of single-member trustee areas. RJN at 1:22 – 3:2; *see also* Timeline attached as part of RJN Ex. B. Defendants held more public hearings than the required minimum.  RJN Ex. E. California law accords jurisdictions a 90-day period from passage of a Resolution of Intent to complete this process.  Cal. Elec. Code § 10010(e)(3)(B).  Defendants completed the statutory process within the prescribed timeline.  *Id.*

In California, school districts do not have the authority to adopt a new electoral system unilaterally. That power rests in an entity called the County Committee on School District Organization. Cal. Educ. Code §§ 5019 & 5019.5(c). On May 2, 2022, the Board of Trustees of the School District passed a resolution requesting that the Kern County Committee on School District Organization ("County Committee") approve a change to its electoral system, adopt five single member areas with by-trustee area voting as reflected in a map for single-member by-trustee area elections, and adopt a sequence of elections in the trustee areas, which were attached to the Resolution. Cal. Educ. Code § 5019(a) & (c), § 5021, & § 5030. RJN Exs. F & G. The map of single-member trustee areas, called the "Purple 2 Map" in the nomenclature of maps developed during the process, included one in which the Latino eligible voters are reported to constitute about 52 percent of all eligible voters according to the American Community Survey data that the Census collected between 2015 and 2019, Trustee Area 5.  See reference in Compl. ¶ 31 & n.3. In another trustee area Latino eligible voters are reported to constitute the plurality of eligible voters at 42 percent, Trustee Area 4.  RJN Ex. A.

Defendants also requested that the County Committee approve the establishment of the Single-member System without calling an election for voter approval—which is ordinarily required—as permitted by Education Code § 5020(a)(2) (compare § 5020(a)(1)):

(a)(2) [A] county committee may, by resolution, approve a proposal to establish trustee areas and to elect governing board members using district-based elections, as defined in

subdivision (b) of Section 14026 of the Elections Code [the California Voting Rights Act], without being required to submit the resolution to the electors of the district for approval. A resolution adopted pursuant to this paragraph shall include a declaration that the change in the method of electing members of the governing body is being made in furtherance of the purposes of the California Voting Rights Act of 2001 (Chapter 1.5 (commencing with Section 14025) of Division 14 of the Elections Code). The resolution shall take effect upon adoption and shall govern all elections for governing board members occurring at least 125 days after the adoption of the resolution.

The County Committee held a public hearing on the resolution and map on May 12, 2022. Plaintiffs and their attorney participated in the public hearing. RJN Ex. M. On May 18, 2022, the County Committee held a properly noticed public meeting, at the close of which it approved the new proposed single-member trustee area electoral system. RJN Ex. L; *see* Decl. of Priscilla Quinn. The County Committee did not call an election for voter approval of the Single-member System.

The new Single-member System replaces the Multi-member System. The County Committee's action adopting the new Single-member System and all relevant data to implement that system have been lodged with the Kern County elections official for implementation in the 2022 elections for the School District's Board of Trustees and thereafter. RJN Ex. O; *see also* Decl. of Grant Herndon. The statutory deadline for implementing the change is July 6, 2022; the County Superintendent of Schools will call the 2022 Board Election in the Single-member System on July 11, 2022, and candidate filing opens on July 18, 2022. Cal. Elec. Code §§ 12262, 10509, 10510; Cal. Educ. Code §§ 5322 & 5324.

Since Plaintiffs filed this action, there has been no activity in this case, except for Defendants' Answer, which was timely filed.

## III.   <u>CAUSES OF ACTION IN THE COMPLAINT</u>.

The complaint alleges two causes of action, First and Third, under federal statutes. The Second Cause of Action is for violation of two California Constitutional provisions over which Plaintiffs allege this court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

<u>First Cause of Action: Violation of the Voting Rights Act of 1965 (Results Test).</u>

Plaintiffs allege a First Cause of Action for Violation of the Voting Rights Act of 1965

under the "Results Test" using the paradigm of proof set forth in *Thornburg v. Gingles*, 478 U.S. 30 (1986). Compl. p. 10:13-15, ¶ 45:23-26, & ¶ 19 ("This action seeks to enforce the Voting Rights Act based on the 'results test' of Section 2, which does not require a showing of discriminatory intent."). The paradigm of proof includes three "Threshold Conditions" that must be satisfied before the case can proceed. Compl. at p. 11:16; *Gingles*, 478 U.S. at 50-51. If the Threshold Conditions are satisfied, the case then proceeds to an analysis of the totality of the circumstances to determine whether the plaintiffs have an unequal opportunity to elect their chosen candidates. *Id*. At the totality stage, courts apply the so-called "Senate Factors," among other considerations, is assessing liability. Compl. ¶ 45.

The first Threshold Condition is that the protected class of Latinos is sufficiently large and geographically compact to constitute a majority in a single-member trustee area. Compl. ¶ 47. Plaintiffs do not allege it was possible to create such Latino majority trustee area in 2011. Instead, they allege, using the 2020 Census data, that such a trustee area could be created ten years later in the territory of former Trustee Area 1 as demonstrated in Exhibit 1 to the Complaint. Compl. ¶¶ 14 & 48 & Exhibit 1. (As noted above, the new Single-member System map includes a trustee area in which Latino eligible voters a majority of the eligible voters.  RJN Ex. A.)

The second Threshold Condition is that Latino electors are politically cohesive as a group. Compl. ¶ 49:23-24. Plaintiffs allege such cohesion is demonstrated in the 2016 vote for candidate Victor Morones in his electoral bid for a seat representing former Trustee Area 2. Plaintiffs allege, however, that voters in former Trustee Area 1 did not vote for trustees in 2016. Plaintiffs also allege that the district-wide vote for 2016 State Propositions 51 and 58 demonstrates Latino political cohesion. Compl. ¶¶ 51-53.

The final Threshold Condition is that non-Latino bloc voting usually defeats the electoral choices of Latino voters. Compl. ¶ 54. Plaintiffs allege that 74% of the Latino electors voted for candidate Morones, but only 9% of other voters, and he lost his electoral bid. Compl. ¶¶ 51 & 52. As noted above, however, Plaintiffs admit that the voters in former Trustee Area 1 in the Multi-member System could not vote for candidate Morones. Compl. ¶¶ 51-53. The complaint contains

no allegations about whether Propositions 51 and 58 passed or failed in the District or in the individual trustee areas of the Multi-member System.

Paragraphs 55 through 72 contain allegations pertinent to the "totality of the circumstances analysis."

Second Cause of Action: Violation of the California Constitution.

Plaintiffs allege the Multi-member System treated Panama-Buena Vista School District voters unequally in violation of Article I, Section 7(a), and Article II, Section 2, of the California Constitution. Compl. ¶ 74. They also allege that inequality in the ability to influence school board policies violates the fundamental right to an education contained in the California Constitution. Compl. ¶ 76.

Third Cause of Action: 14 U.S.C. § 1983

Plaintiffs' allegations of a violation of the Civil Rights Statute have two bases. The first is the alleged violation of Section 2 of the federal Voting Rights Act. Compl. ¶ 84. Plaintiffs also allege that after receiving the February 7, 2022 letter, the School District Board of Trustees met in closed session on February 8, February 10, and February 22, 2022, which meetings were not properly noticed to disclose the subject of the closed session pursuant to the Brown Act, California's regulatory scheme for open meetings for local governments. Compl. ¶¶ 35-38; Cal. Gov. Code §§ 54954.2, 54954.5, 54956.9(d)(2) & (e)(2). Then, when Plaintiffs' attorney requested documentation concerning the purpose of the closed session meetings, the documents were not provided "without delay." Compl. ¶¶ 39 & 42; Cal. Gov. Code § 54954.5(a).

Plaintiffs allege that the "purpose of the continuing course of action was, and is to perpetuate the electoral method [i.e. the Multi-member System] that violates Plaintiffs' rights under a federal statute, 52 U.S.C. § 10301." Compl. ¶ 85. Of course, that system was not perpetuated; it was abandoned.

Prayer For Relief.

Plaintiffs allege, "All Plaintiffs seek prospective injunctive and declaratory relief eliminating the multi-member districts and creating a Latino majority trustee area." Compl. § 89.

Plaintiffs seek:

1.    A decree declaring that the Multi-member By-trustee Area System violates section 2 of the Voting Rights Act, the California Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983. Prayer ¶ 1. As noted above, the Multi-member System is no longer in use.

2.    For preliminary and permanent injunctive relief prohibiting the School District from conducting elections other than in single-trustee areas. Prayer ¶ 2. As noted above, the District's new electoral system includes five single-member trustee areas, which have been approved by the County Committee on School District Organization and submitted to the County elections office for implementation for the November 2022 school board elections.

3.    A "declaratory judgment enjoining" the School District to comply with the Voting Rights Act and the California Constitution and directing an appropriate remedy including a 1) a remedial trustee area map with a majority Latino trustee area, 2) an election sequence "that reflects the extent to which this area has enjoyed higher participation by minority electors in the statewide general election that votes for President, and 3) the establishment of an independent commission to redistrict the trustee areas after the 2030 decennial Census. Prayer ¶ 3. As reflected in Defendants' Request for Judicial Notice, the School District has adopted the Single-member System. Defendant has not challenged the Single-member System as violating any federal or state law or as improper in any way.

## IV.    STANDARD OF REVIEW.

### A.    Federal Rule of Civil Procedure 12(b)(1) (Lack of Jurisdiction).

"Because standing and mootness both pertain to a federal court's subject-matter jurisdiction under Article III, they are properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) ...." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "Unlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). A challenge pursuant to Rule 12(b)(1) may be facial or factual. See *White*, 227 F.3d at 1242. With a

factual attack, a court may "look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment" and "need not presume the truthfulness of the plaintiffs' allegations." *Id*. "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch*., 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. Proc. 12(h)(3).

### B.   Federal Rule of Civil Procedure 12(c) (Failure to State a Claim)

"Judgment on the pleadings is properly granted when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Knappenberger v. City of Phoenix*, 566 F.3d 936, 939 (9th Cir. 2009). However, the court must not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations," and "[m]ere conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion for judgment on the pleadings." *Garrison v. Oracle Corp*., 2015 WL 1849517, at *4 (N.D. Cal. Apr. 22,2015) (internal quotation marks and citations omitted). In addition to the contents of the complaint, the "court may also consider, on a Rule 12(c) motion, facts that are contained in materials of which the court may take judicial notice." *Beckway v. DeShong*, 717 F. Supp. 2d 908, 914 (N.D. Cal. 2010) (internal quotation marks omitted). The court need not accept as true allegations that are contradicted by judicially noticeable facts. *Garrison*, 2015 WL 1849517, at *4. "Courts also have discretion to grant dismissal on a 12(c) motion, in lieu of judgment, on any given claim." *In re Dynamic Random Access Memory (Dram) Antitrust Litig*., 516 F. Supp. 2d 1072, 1084 (N.D. Cal. 2007).

To survive a motion for judgment on the pleadings, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To be plausible on its face, the claim must contain enough facts that "allow[] the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

**V.   ARGUMENT.**

**A.   This Case Is Moot: There Is No Longer a Live Controversy Between the Parties Admitting of Specific Relief.**

Plaintiffs cannot plausibly contend that the Multi-member System will be used in 2022 elections or ever again. It cannot be disputed the Multi-member System has been replaced with the Single-member System. "It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "Article III of the United States Constitution limits federal court jurisdiction to 'actual, ongoing cases or controversies.'" *Wolfson v. Brammer*, 616 F.3d 1045, 1053 (9th Cir. 2010) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)). "[A] federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (citation omitted). "Its judgments must resolve 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id.* (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).

"To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (quoting *Preiser*, 422 U.S. at 401). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Further, "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citation omitted).

"If the controversy is moot, . . . the trial . . . court[] lack[s] subject matter jurisdiction and the concomitant power to declare the law by deciding the claims on the merits." *In re Burrell*, 415

F.3d 994, 998 (9th Cir. 2005) (citation omitted). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (alteration in original) (quoting *Cty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979)). In other words, "moot cases [are] those which have lost their character as present, live controversies." *Id.* (citation omitted). Thus, "[i]f an event occurs" during the litigation "that prevents the court from granting effective relief, the claim is moot and must be dismissed." *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997) (citations omitted); *see, e.g.*, *Horizon Bank & Tr. Co. v. Massachusetts*, 391 F.3d 48, 53 (1st Cir. 2004) ("[A] case not moot at the outset can become moot because of a change in the fact situation underlying the dispute, making relief now pointless." (citing *Weinstein v. Bradford*, 423 U.S. 147, 148–49 (1975))); *S. Cal. All. of Publicly Owned Treatment Works v. EPA*, No. 2:14–cv–01513–MCE–DAD, 2015 WL 2358620, at *2 (E.D. Cal. May 15, 2015) ("When a case becomes moot, federal courts lose jurisdiction." (citing *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992))).

Here it cannot be disputed that the Multi-member System has been replaced with a Single-member System, and the Single-member System has not been challenged as unlawful in any way.

The Single-member System has been finally approved by the Kern County Committee on School District Organization and has been submitted to the Kern County elections office as the applicable electoral system for Defendant School District. Significantly, the Ninth Circuit Court of Appeals explicitly states that a Section 2 lawsuit challenging an at-large election system "***would be moot if [] the City had already adopted a district election system***." *Ruiz v. City of Santa Maria*, 160 F.3d 543, 549 (9th Cir. 1998) (emphasis added); *see also West v. Natchez*, 2016 U.S. Dist. LEXIS 38775 (S.D. Miss. Mar. 24, 2016) (Section 2 challenge to redistricting plan moot after plan replaced by new plan that complies with law); *Chestnut v. Merrill*, 446 F. Supp. 3d 908, 920 (N.D. Ala. 2020); *Puerto Rican Def. Educ. Fund v. Gantt*, 796 F. Supp. 698, 700 (E.D.N.Y. 1992) (three-judge VRA court) (dismissing challenge to congressional districting plan as moot when it was replaced by a new districting plan while the case was pending and rejecting plaintiffs' claim

that their complaint was still viable because "the state's plan did not sufficiently remedy prior dilution of the voting rights of Latinos"); *Dallas v. United States,* 482 F. Supp. 183, 184 (D.D.C. 1979) (three-judge VRA court) (case moot because "the original [district] plan, which is the subject of this declaratory judgment action, was withdrawn, by repealing a city ordinance, and a new plan was enacted"); *Bradley v. Work,* 154 F.3d 704, 710 (7th Cir. 1998) (challenge to subsequently-abandoned method of electing judges moot).

The 2011 Multi-member System was abandoned by Defendants and replaced by the County Committee, there is no longer a live controversy between the parties. Plaintiffs request injunctive relief preventing the use of the Multi-member System. It is too late for that – the Multi-member System is gone. Plaintiffs seek an injunction requiring the Defendants "to comply with the relevant provisions of the Voting Rights Act." Such "obey-the-law injunctions" are disfavored. *Winters v. Jordan*, 2010 U.S. Dist. LEXIS 72682, at *43 (E.D. Cal. July 19, 2010) (a court is "loathe to enter" a general "obey the law" type of injunction) (citing *Ruff v. County of Kings*, 2009 U.S. Dist. LEXIS 118239, 2009 WL 5111766, at *18 (E.D. Cal. Dec. 18, 2009) (noting that blanket injunctions to obey the law are disfavored) (citing *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1226 (C.D. Cal. 2007))); *accord C.F. v. Capistrano Unified Sch. Dist.*, 647 F. Supp. 2d 1187, 1193-94 (C.D. Cal. 2009); see also *Chestnut*, 446 F. Supp. at 919-20 ("[A]ll of the Plaintiffs' arguments about a declaratory judgment in this case remedying future vote dilution under § 2 merely ask the court to reiterate an obligation already incumbent upon the Alabama Legislature. Because this request for relief effectively duplicates a standing obligation established by Congress, a declaratory judgment in this case would have no 'practical effect' on the rights or obligations of the parties and the case is moot. [Citation omitted] The court finds the requested relief similar to an 'obey-the-law injunction' and, thus, finds it similarly not to be countenanced. *Hughey v. JMS Dev. Corp.*, 78 F.3d 1523, 1531 (11th Cir. 1996) (stating that "appellate courts will not countenance injunctions that merely require someone to 'obey the law'")).

Plaintiffs do not allege that the Single-member System is unlawful in any way. Plaintiffs pray for the majority Latino trustee area in the Single-member System to be on the ballot in the

Presidential election cycle to the extent "this area has enjoyed higher participation by minority electors in the statewide general election that votes for President". Prayer ¶ 3.[1] Plaintiffs further pray that the Court order the 2030 redistricting be performed by an independent Commission. But to be entitled to any relief at this point they would have to show that the new Single-member System is itself illegal, which they have not alleged. *See Upham v. Seamon*, 456 U.S. 37, 41-43 (1982) (where a districting plan is found to be illegal, the court must give the legislative body the first opportunity to propose a remedy and must defer to that remedy except to the extent it is itself found to violate federal law); *Perry v. Perez*, 565 U.S. 388, 393 (2012) (overruling trial court's adoption of remedy that improperly departed from lawful state redistricting policies); *White v. Weiser*, 412 U.S. 783, 795-96 (1973) (same).[2]

Finally, the "voluntary cessation - capable of repetition" exception does not save this case from mootness. First, Defendants are without authority to change their own electoral system back to a multi-member system. Under clear California statutory authority, only the Kern County Committee has that power, and can do so without voter approval, "in furtherance of the purposes of the California Voting Rights Act of 2001." Cal. Educ. Code §§ 5019, 5019.5(c), & 5020(a)(2). When the County Committee acts pursuant to Elections Code § 5020(a)(2), "The resolution shall take effect upon adoption and shall govern all elections for governing board members occurring at least 125 days after the adoption of the resolution."   Second, the County Committee is entitled to a presumption that it is acting in good faith.  *Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010); *West*, 2016 U.S. Dist. LEXIS 38775, at *7 ("[G]overnment actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of

---

[1] There is a serious question whether scheduling election years based on the race of the voter could survive strict scrutiny absent a strong basis in evidence that the Defendants' electoral system violated Section 2 of the federal Voting Rights Act. *Cooper v. Harris*, 137 S. Ct. 1455, 1464 (2017) (citing *Alabama Legislative Black Caucus v. Alabama*, 575 U.S. __, __, 135 S. Ct. 1257, 191 L. Ed. 2d 314, 335 (2015)). As demonstrated below, Plaintiffs have not alleged the bare fundamentals to establish such a claim.

[2] For this Court to grant Plaintiffs' request to remove the redistricting power from the Board of Trustees in 2031 would also raise significant federalism and separation of powers concerns.

good faith because they are public servants, not self-interested private parties."). Third, redistricting is a legislative action. *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 997 F. Supp. 2d 1047, 1051 (D. Ariz. 2014); *Ortiz v. Bd. of Supervisors*, 107 Cal. App. 3d 866, 872, 166 Cal. Rptr. 100, 104 (1980). As such, the County Committee's exercise of its statutory authority to change Defendants' electoral system is presumed to moot this action:

> [W]e join the majority of our sister circuits in concluding that legislative actions should not be treated the same as voluntary cessation of challenged acts by a private party, and that we should assume that a legislative body is acting in good faith in repealing or amending a challenged legislative provision, or in allowing it to expire. Therefore, in determining whether a case is moot, we should presume that the repeal, amendment, or expiration of legislation will render an action challenging the legislation moot, unless there is a reasonable expectation that the legislative body will reenact the challenged provision or one similar to it.

*Bd. of Trs. of the Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (emphasis added).

### B. The Court Must Dismiss the Second Cause of Action Alleging Claims Solely Under the California Constitution.

The Second Cause of action raises novel and complex issues of State law, whether the alleged creation of multi-member trustee areas, designing electoral districts that include rural and urban voters in the same district, and unintentional conduct allegedly resulting in disproportionate effects on minorities, violate Article I, § 7(a) and Article II, §2, including the fundamental right to an education, of the California Constitution. 28 U.S.C. § 1367 confers jurisdiction on a district court over such claims that are so related to claims in the action within the original jurisdiction of the Court that they form part of the same case or controversy under Article III of the United States Constitution. However, because the federal claims in this action are moot and the district court lacks jurisdiction over them, there is no supplemental jurisdiction. *Herman Family Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir. 2001); *Lopez v. Lassen Dairy, Inc.*, 2010 U.S. Dist. LEXIS 125172, at *6-7 (E.D. Cal. Nov. 12, 2010) ("[S]upplemental jurisdiction may only be invoked when the district court has a hook of original jurisdiction on which to hang it.")  "If a federal claim is dismissed for lack of subject matter jurisdiction, a district court has no discretion

1   to retain the supplemental claims for adjudication." *Herman Family*, 254 F.3d at 805.[3]

2   **C.    Plaintiffs Have Failed to Allege the Foundational Elements for a Claim That**
3   **the Multi-member System Violates Section 2 of the Federal Voting Rights Act.**

4       Section 2 of the federal Voting Rights Act of 1965 provides that: "No voting qualification

5   or prerequisite to voting, or standard, practice, or procedure shall be imposed or applied by any

6   State or political subdivision to deny or abridge the right of any citizen of the United States to vote

7   on account of race or color." 52 U.S.C. § 10301(a).

8       In the seminal case of *Thornburg v. Gingles*, 478 U.S. 30 (1986), the United States

9   Supreme Court held that to plead a claim for vote dilution under the results test [4] of Section 2 of

10  the federal Voting Rights Act, 52 U.S.C. § 10301 (formerly 42 U.S.C. § 1973), the plaintiffs must

11  first establish three preconditions: first, that the minority group in question is sufficiently large and

12  compact to form a majority in a single member district; second, that the minority group is

13  "politically cohesive"; and third, that the majority votes "sufficiently as a bloc to enable it ...

14  usually to defeat the minority's preferred candidate." *Id.* at 50-51. *Thornburg v. Gingles* articulated

15  these preconditions in the context of a challenge to multi-member districts. Failure to establish any

16  of the three *Thornburg v. Gingles* preconditions is fatal to a Section 2 claim. *Bartlett v. Strickland*,

17  556 U.S. 1, 11 (2009). "[O]nly when a party has established the *Gingles* requirements does a court

18  proceed to analyze whether a violation has occurred based on the totality of the circumstances"—

19

20      [3] Even if this Court had discretion to retain jurisdiction of Second Cause of Action, that
21  discretion would be properly exercised to dismiss those claims. As noted above, Plaintiffs February
    7 demand letter asserted vote dilution claims under the California Voting Rights Act, those claims
22  are primarily rooted in State law because of Plaintiffs' failure to state a claim under Section 2 of
    the federal Voting Rights Act, and there has been no litigation activity whatsoever in this case.
23  *Montero v. AGCO Corp.*, 19 F. Supp. 2d 1143, 1147 (E.D. Cal. 1998) ("[P]rimary responsibility
    for developing and applying state law rests with the state courts. Therefore, when federal claims
24  are eliminated before trial, district courts should ordinarily decline to exercise supplemental
    jurisdiction), *aff'd, Montero v. AGCO Corp.*, 192 F.3d 856 (9th Cir. 1999).
25

26      [4] Despite a sprinkling of allegations insinuating an intent to discriminate under Section 2,
27  Plaintiffs disavow any such claim. Compl. ¶ 19. Moreover, all of the allegations supposedly
    suggesting intentional discrimination occurred in 2022, not 2011 when the Multi-member System
28  was implemented. Compl. ¶¶ 16-19, 27, 32-33, 35-43.

whether the challenged map deprives the minority group of an equal opportunity to elect candidates of their choice. See *Id.* at 11-12.

        **1.      Plaintiffs do not allege it was possible to create a trustee area in 2011 with a majority of eligible voters who were Latino.**

Nowhere do Plaintiffs allege that in 2011, when the Multi-member System was established, it was possible to create a single-member trustee area in which Latinos constituted a majority of the eligible voters. The Latino Plaintiffs have included a single allegation that it was possible to create a single-member trustee area in 2011 in which 52.6% of electors were either Latino, Asian-American, Native American, or Black. Plaintiffs allege this would have been required under Section 2 "if these groups vote cohesively when compared to the rest of the electorate." Compl. ¶ 23. Plaintiffs do not allege such cohesion.[5] *See Romero v. Pomona*, 883 F.2d 1418, 1426 (9th Cir. 1989) ("[P]laintiffs contend that, for the purpose of satisfying Thornburg's geographical compactness requirement, Hispanics and blacks can be considered a politically cohesive minority coalition, because white voters tend to vote differently from blacks and Hispanics in Pomona. This claim is foreclosed, however, by the district court's finding that blacks and Hispanics in Pomona are not politically cohesive"); *Broward Citizens for Fair Dists v. Broward Cty.*, 2012 U.S. Dist. LEXIS 46828, at *23 (S.D. Fla. Apr. 3, 2012) (Motion to dismiss § 2 cause of action granted: "[T]he Amended Complaint fails to adequately plead political cohesion on the part of African American and Hispanic voters, as required by *Gingles'* second prong.")

Plaintiffs allege that it now possible, *using 2020 Census data*, to create a single-member trustee area in which Latinos constitute a majority of the eligible voters, but that claim is moot as discussed above. The Multi-member System is gone, replaced by the Single-member System including a majority Latino eligible voter trustee area.

/ / /

/ / /

---

[5] Plaintiffs also randomly include an allegation about Asian-American voters (Compl. ¶¶ 45, 68 & 72) but do not allege these voters vote cohesively with Latino voters.

1

2

**2.    Plaintiffs have not alleged "trustee area-specific" facts demonstrating Latino voters are politically cohesive in Area 1 in the Multi-member System and in their demonstration trustee area.**

3

4

5

6

7

8

9

10

11

12

13

14

15

The gravamen of Plaintiff's Section 2 claim is that the Multi-member System violated Section 2 because the system diluted Latino voting strength in former Trustee Area 1 and in specific in the demonstration Latino majority trustee area reflected in Exhibit 1. Compl. ¶ 14, 24 & Ex. 1. Plaintiffs do not allege, however, that Latino voters in former Trustee Area 1 or in their demonstration Latino trustee area are politically cohesive. They allege Latino voters in former Trustee Area 2 were politically cohesive in the 2016 Board of Trustees Election in which candidate Morones ran for election. Compl. ¶ 51. They readily concede, however, that former Trustee Area 1 voters did not vote in that election. Compl. ¶ 53. Plaintiffs further allege that school district-wide, the vote on State Propositions 51 and 58 demonstrated Latino political cohesion. Compl. ¶ 51. There is no allegation, however, focused on the Latino voters in former Trustee Area 1. Plaintiffs allege there were elections in former Trustee Area 1 (Compl. ¶ 26), yet they allege nothing about these elections, in particular whether Latino voters demonstrated politically cohesive voting patterns in these elections.

16

17

18

19

20

21

22

23

Plaintiffs cannot allege a violation of the Voting Rights Act in the part of the District encompassed by former Trustee Area 1 based on voting patterns in former Trustee Area 2. In *Thornburg v. Gingles*, the Supreme Court held that the inquiry into vote dilution is "district [i.e. trustee area] specific," and that courts must not rely on aggregate data from a challenged jurisdiction in concluding that racially polarized voting exists in a challenged trustee area. 478 U.S. at 59 n.28 (emphasis added). Rather, they must rely on data "specific to each individual district [i.e. "trustee area" in this case]" in making the appropriate findings. *Id.*; *see also Old Person v. Cooney*, 230 F.3d 1113, 1119 n.3 (9th Cir. 2000).

24

25

26

The United States Supreme Court in March of this year reiterated this principle when rejecting a redistricting plan intentionally creating majority-minority districts without a sufficient basis in district-specific evidence that Section 2 required such gerrymandering:

27

/ / /

28

[T]he court's analysis of Gingles' preconditions fell short of our standards. As we explained in *Cooper*, "[t]o have a strong basis in evidence to conclude that §2 demands . . . race-based steps, the State must carefully evaluate whether a plaintiff could establish the Gingles preconditions . . . in a new district created without those measures." 581 U. S., at ___, 137 S. Ct. 1455, 197 L. Ed. 2d 837, 856. Rather than carefully evaluating evidence at the district level, the court improperly relied on generalizations to reach the conclusion that the preconditions were satisfied. See id., at ___, n. 5, 137 S. Ct. 1455, 197 L. Ed. 2d 837, 877 (a "generalized conclusion fails to meaningfully . . . address the relevant local question" whether the preconditions would be satisfied as to each district).

*Wis. Legis. v. Wis. Elections Comm'n*, 142 S. Ct. 1245, 1250 (2022).

  In this case, the complaint contains no allegations to satisfy the second *Thornburg v. Gingles* precondition, that Latino Voters in former Trustee Area 1 of the Multi-member System and the demonstration majority-minority trustee area are politically cohesive.

   **3. Plaintiffs have not alleged "trustee area-specific" facts demonstrating the third *Thornburg v. Gingles* pre-condition, that non-Latino voters in Area 1 in the Multi-member System and in their demonstration trustee area "usually" defeat the Latino candidate of choice.**

  The complaint does not allege any facts plausibly demonstrating that the third *Thornburg v. Gingles* precondition is satisfied. Again, allegations of "trustee-area specific" facts are required. The Complaint accurately states this requirement to allege the Third Threshold Condition: "The final threshold condition is that non-Latino voting usually defeats the Latino candidate of choice." Compl. ¶ 54. That paragraph continues with conclusory statements about the 2016 election in Area 2, but not one word about the electoral success of Latino voters in former Trustee Area 1. The Complaint mentions State Propositions 51 and 58 and the support of Latino voters for those measures but contains no allegations about the outcome of the vote on those measures in Trustee Area 1 or for that matter anywhere in the School District. The Complaint is completely silent on the 2018 Board of Trustees election in former Trustee Area 1 in which Latina candidate ran for election and won, or any other potentially relevant election.

  **D. The Second Cause of Action Fails to Allege a Claim for Voting Discrimination Under the California Constitution Which Requires an Allegation of Intentional Discrimination, Which Plaintiffs Have Disavowed.**

  While in some instances the state Constitution is read to provide rights beyond those

granted by the U.S. Constitution, that is only the case when there are "cogent reasons" for reading them differently. *Edelstein v. City & County of San Francisco*, 29 Cal. 4th 164, 179 (2002). In the context of election law challenges generally, and redistricting and voting rights specifically, California's courts apply federal constitutional standards to claims under the California constitution. *See id.* ("'[i]n analyzing constitutional challenges to election laws, this court has followed closely the analysis of the United States Supreme Court.'" (quoting *Canaan v. Abdelnour*, 40 Cal. 3d 703, 710 (1985)); *Castorena v. City of L.A.*, 34 Cal. App. 3d 901, 910 (1973) (in a challenge to Los Angeles' redistricting plan under both the U.S. and California Constitutions holding that "[t]he basic principles for evaluating petitioners' claims are set forth in a series of United States Supreme Court cases."); *Jauregui v. City of Palmdale*, 226 Cal. App. 4th 781, 799-800 (2014) ("Our Supreme Court has described the Fourteenth Amendment and article I, section 2 as providing comparable protections in voting rights cases. [Citations.] California decisions involving voting issues quite closely follow federal Fourteenth Amendment analysis.").

The federal constitutional standard for challenging electoral districts requires a showing of intentional discrimination. *Mobile v. Bolden*, 446 U.S. 55, 67-68 (1980). The Plaintiffs have disclaimed any allegation of intentional discrimination. *See* footnote 4, *supra*. Thus, they have failed to allege that the Multi-member System violated the federal, and, accordingly, have failed to allege that it violates the state Constitution either.

The fact that Plaintiffs have also sought to frame this claim as a violation of the "fundamental right to education" does not change the conclusion. The courts generally apply the same "analytic framework" to constitutional election law challenges regardless of the provision they are based on. *See Dudum v. Arntz*, 640 F.3d 1098, 1106 n.15 (9th Cir. 2011).

### E.    The Third Cause of Action Fails Because the Complaint Does Not Allege a Predicate Violation of Federal Rights, as Required by 42 U.S.C. § 1983.

Section 1983 "does not create substantive rights; it merely serves as the procedural device for enforcing substantive provisions of the *Constitution and federal statutes*." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991) (emphasis added). Accordingly, one of two essential proof

requirements imposed on a plaintiff is that the allegedly violative conduct of defendants deprived the plaintiff "of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy,* 844 F.2d 628, 632-33 (9th Cir. 1988).

It is hornbook law that violations of rights created by state law do not support a cause of action under section 1983. *Galen v. County of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007); *see also Armstrong v. Asselin*, 734 F.3d 984, 989(9th Cir. 2013) ("violation of the Alaska constitution alone does not establish a basis for a § 1983 lawsuit"); *Lehrman v. New York State*, 2019 U.S. Dist. LEXIS 175846, at *4 (C.D. Cal. Sept. 3, 2019).

The gravamen of the section 1983 cause of action is that Plaintiffs' rights have been violated because of the alleged violation of Section 2 and facilitation of a continuing violation (which, of course, did not happen) by unknown persons' incorrect advice leading to a violation of the California open meeting provisions contained in the Brown Act. Cal. Gov. Code § 54950 *et seq.*; *see also* Cal. Gov. Code § 6250 *et seq*. Compl. ¶¶ 12, 85 & 86 and paragraphs incorporated therein.

Such violations, even if proven, do not give rise to a section 1983 claim. In fact, federal courts have repeatedly dismissed section 1983 claims premised on violations of state open meetings and public records statutes. See *Davis-Payne v. Powers,* 2013 U.S. Dist. LEXIS 207899, at *14 (W.D.N.Y. Apr. 15, 2013) (in alleging failure to comply with "New York State's Freedom of Information Law, Plaintiff at most has alleged a violation of state law, not a federal constitutional right cognizable in a § 1983 proceeding"); *Comm. to Protect Our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1184 (E.D. Cal. 2017) (dismissing 1983 claim based on denial to records under California Public Records Act and Brown Act, as alleged "violations of state law do not alone support liability under § 1983").

To the extent the section 1983 action is premised on the Section 2 violations, this motion should be sustained because, as set forth at length above, the Plaintiffs fail to allege a violation of Section 2 and this action is moot.

/ / /

**VI.    <u>CONCLUSION</u>.**

This action is undeniably moot and must be dismissed for want of subject matter jurisdiction. In the alternative, the Complaint fails to allege a violation of federal law entitling Defendants to judgment on the pleadings in their favor.

Respectfully submitted,

Dated:  June 9, 2022

NIELSEN MERKSAMER
    PARRINELLO GROSS & LEONI LLP

By:    /s/     Marguerite Mary Leoni
            Marguerite Mary Leoni
            Christopher E. Skinnell

            *Attorneys for Defendants*
            PANAMA-BUENA VISTA UNION
            SCHOOL DISTRICT, *et al.*