¶UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOLORES HUERTA FOUNDATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PANAMA-BUENA VISTA UNION SCHOOL DISTRICT, et al.,<br><br>Defendants. | CASE NO. 22-cv-00226-AWI-CDB<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>(Doc. No. 8) |

Defendants Panama-Buena Vista Union School District ("PBVUSD") and Panama-Buena Vista Union School District Board of Education ("PBVUSD Board") bring a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure and, in the alternative, a motion for judgment on the pleadings under Rule 12(c).[1] Doc. No. 8. For the reasons that follow, the motion to dismiss will be granted.

## BACKGROUND

**A.    Summary of Relevant Allegations in the Complaint**

Defendant PBVUSD is a public elementary school district that includes parts of Kern County. Doc. No. 1 ¶ 10. Defendant PBVUSD Board is a board of five elected trustees that governs the PBVUSD. Id. ¶ 11.

Plaintiff Dolores Huerta Foundation ("DHF") is a non-profit organization whose members include Latino electors registered to vote in the PBVUSD. Doc. No. 1 ¶ 5. Plaintiffs Celeste Hernandez, Alexander Xavier Ramirez, Selena Maya Ramirez and Lila Perez (collectively,

---

[1] Unless otherwise indicated, "Rule," as used herein, refers to the Federal Rules of Civil Procedure.

"Individual Plaintiffs") are Latino electors registered to vote in the PBVUSD and for the PBVUSD Board.[2] Id. ¶¶ 6-9.

This action was filed on February 22, 2022. Doc. No. 1. The Complaint alleges that the PBVUSD Board has been elected through a "multi-member plan" since 2011. Doc. No. ¶¶ 20-25. Under that plan, two trustees are elected by voters in "Area 1" and three trustees are elected by voters in "Area 2." Id. ¶¶ 24-26. Area 2 (which elects three trustees) is "more affluent" and votes on the presidential election cycle. Id. ¶ 13. Area 1 (which elects two trustees) has a higher minority population and votes on the gubernatorial election cycle, when minority turnout is lower. Id.

Plaintiffs allege that "[t]he multi-member trustee areas" that were implemented in 2011 "have the effect of diluting the influence of Latino electors" and that "it is possible to create a single-member trustee area in which Latino electors constitute a majority of eligible voters." Doc. No. 1 ¶ 14.

The Complaint further alleges that Plaintiffs notified the PBVUSD on February 7, 2022 that the multi-member plan was unlawful under the California Constitution and the federal Voting Rights Act, and "proposed a collaborative approach" to bringing the electoral system into compliance with applicable law. Doc. No. 1 ¶ 17. On February 8 and February 10, 2022, the president of the PBVUSD Board convened special meetings of the PBVUSD Board in closed session. Id. ¶ 36. The PBVUSD Board provided just 24-hours notice of these meetings and failed to disclose the subject matter of the closed session as required by the Brown Act—a California law limiting private meetings by government bodies. Id. According to Plaintiffs, the PBVUSD Board used these "unlawfully closed sessions [] to engage in the collective acquisition and exchange of facts preliminary to an ultimate decision" on which system to use in PBVUSD Board elections and "to devise a strategy to prevent Plaintiffs from enforcing" applicable law. Id. ¶ 37. Further, the PBVUSD Board failed to provide Plaintiffs with materials relating to the February 8, 2022 meeting and a January 18, 2022 meeting in the timely—"without delay"—manner required

---

[2] DHF and the Individual Plaintiffs are referred to collectively herein as "Plaintiffs." The PBVUSD and the PBVUSD Board are referred to collectively herein as "Defendants."

1  by California's Brown Act. Id. ¶¶ 18, 39 & 42. Finally, the PBVUSD superintendent gave notice
2  on February 21, 2022 (which was a state and federal holiday) that the PBVUSD would hold a
3  hearing on February 22, 2022 regarding "proposed maps to rebalance the Board's trustee election
4  areas." Id. ¶ 43.

5        Based on the foregoing allegations, Plaintiffs allege: (i) a cause of action for violation of
6  Section 2 of the federal Voting Rights Act (the First Cause of Action); (ii) a cause of action for
7  violation of Article I, Section 7(a) and Article II, Section 2 of the California Constitution (the
8  Second Cause of Action); and (ii) a cause of action under 42 U.S.C. § 1983 (the Third Cause of
9  Action). Doc. No. 1 ¶¶ 44-90.

10        The First Cause of Action—for violation of Section 2 of the federal Voting Rights Act—
11  alleges that the stated rationales for rejecting a single-member system for trustee elections in 2011
12  were unsound and that Defendants cannot "provide a racially neutral justification" for the multi-
13  member system that was put into place in 2011. Doc. No. 1 ¶ 70. Further, Plaintiffs allege that
14  Defendants cannot "provide a racially neutral justification for scheduling the three-member area
15  with fewer Latino voters for the presidential election," while scheduling the two-member area with
16  more Latino votes for the lower-turn-out gubernatorial election. Id. ¶ 71.

17        The Second Cause of Action alleges that Defendants violated provisions in the California
18  Constitution guaranteeing equal protection, an affirmative right to education and an affirmative
19  right to vote by "creating areas unequal in the number of trustees" and failing to create "urban
20  trustee areas" in 2011. Doc. No. 1 ¶¶ 73-81.

21        The Third Cause of Action is brought under 42 U.S.C. § 1983 based on alleged violations
22  of Section 2 of the federal Voting Rights Act, asserting that the multi-member system adopted in
23  2011 dilutes Latino votes and "interferes with DHF's ability to fulfill its organizational mission
24  and role of organizing voters and community leaders." Doc. No. 1 ¶ 84.

25        As to relief, Plaintiffs seek a decree that the multi-member system implemented in 2011
26  violates the federal Voting Rights Act and the California Constitution; "injunctive relief
27  prohibiting PBVUSD, its superintendent, its trustees and other officials …, from calling,
28  conducting or certifying the results of any election that does not elect by single-trustee areas"; "a

declaratory judgment enjoining PBVUSD to comply with [] relevant provisions of the Voting Rights Act and California Constitution and directing an appropriate remedy"; and "nominal or other damages to reflect the burdens and obstacles that at-large and non-district-based elect[ions] place on the organizational mission of DHF to improve civil engagement among immigrant, minority, and working-class communities." Doc. No. 1 at 19:23-20:21.[3]

**B.     Summary of Evidence Set Forth by Defendants**

Defendants set forth declarations with exhibits and seek judicial notice for other records that show the following:[4]

On February 9, 2022, the PBVUSD received a letter from Plaintiffs' attorney dated February 7, 2022, asserting that the multi-member system implemented in 2011 violated the California Voting Rights Act and the federal Voting Rights Act and demanding a single-member system for the election of trustees to the PBVUSD Board. Doc. No. 8 at 11:25-12:2. On February 18, 2022, the PBVUSD posted an agenda for a regular February 22, 2022 meeting that included adoption of a Resolution of Intent to replace the existing multi-member system with five single-member trustee areas using by-trustee area voting. Id. at 12:6-11. On February 22, 2022, the PBVUSD Board passed the Resolution of Intent and Plaintiffs filed this action. Id. at 12:12-17.

After the Resolution of Intent was passed and this action was filed, Defendants developed a proposal for an electoral system using single-member trustee areas. Doc. No. 8 at 13:1-9. On May 2, 2022, the PBVUSD Board passed a resolution requesting that the Kern County Committee on School District Organization ("County Committee") eliminate the multi-member system that had been implemented in 2011 and "adopt five single member areas with by-trustee area voting."

---

[3] Page citations are to the page numbers in the CM/ECF stamp at the top of each page of documents filed with the Court electronically.

[4] Defendants filed a request for judicial notice, Doc. No. 8-4, and a supplemental request for judicial notice, Doc. No. 16-1, as well as declarations with exhibits in support of the instant motion. Plaintiffs have not objected to Defendants' declarations, exhibits or requests for judicial notice. See generally Doc. No. 11. Further, courts are permitted to look beyond the pleadings in determining jurisdiction on Rule 12(b)(1) motions. St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989). The Court will therefore consider public records proffered by Defendants in deciding Defendants' Rule 12(b)(1) motion to the extent they evidence implementation of a single-member system for PBVUSD Board elections. See Fed.R.Evid. 201; Gilbrook v. City of Westminster, 177 F.3d 839, 858 (9th Cir. 1999) ("[a] trial court may presume that public records are authentic and trustworthy"); United States ex rel. Dingle v. BioPort Corp., 270 F.Supp.2d 968, 972 (W.D. Mich. 2003) (finding that federal courts may take judicial notice of "public records and government documents available from reliable sources on the Internet").

1 Id. at 13:12-17. The proposed map of five single-member trustee areas included an area in which
2 "the Latino eligible voters are reported to constitute about 52 percent of all eligible voters." Id. at
3 13:17-21. The County Committee held a public hearing on May 12, 2022 and approved the new
4 single-member system at a public meeting on May 18, 2022. Id. at 14:6-11. Official notice of
5 County Committee approval of the new single-member system was issued on July 12, 2022, and
6 and thus the single-member system went into effect (in place of the multi-member system) for the
7 2022 PBVUSD Board elections. Id. at 14:12-19; Doc. No. 16 at 7:2-9.

## DEFENDANTS' MOTION

*Defendants' Opening Memorandum*

Defendants argue in their opening memorandum, Doc. No. 8, that the federal claims in this action (First and Third Causes of Action) are moot and must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) because the multi-member system at issue in the Complaint was replaced earlier this year with a single-member system. Further, Defendants contend that the Court does not have jurisdiction over Plaintiffs' state law claims (set forth in the Second Cause of Action) because Plaintiffs' federal claims are moot and that, in any event, the Court should not exercise supplemental jurisdiction over the Second Cause of Action because it raises novel and complex questions of state law more properly addressed by a state court. In the alternative, Defendants argue that Plaintiffs have failed to state a claim on which relief can be granted and that judgment on the pleadings in favor of Defendants is therefore warranted under Rule 12(c).

*Plaintiffs' Opposition*

Plaintiffs argue in opposition that the PBVUSD "has made substantial progress in moving away from the multi-member system" but has not established that the new single-member system "will provide equal influence for Latino voters." Doc. No. 11 at 5:5-7. For example, Plaintiffs contend that "the sequencing of elections" (under which some areas vote during presidential elections and others vote during gubernatorial elections) "all but guarantees" that the system and map implemented in 2022 "will not be effective." Id. at 5:7-9. Similarly, Plaintiffs argue that the new single-member system impairs "the emergence of an authentic leader organically chosen by

5

the community" and "ensure[s] Latinos will be quantitatively diluted for most of the next decade." Id. at 5:12-16. Plaintiffs argue that "[b]oth plaintiffs and defendant[s] would be best served by focusing on remedial proposals" and seek leave to restate their claims—and add the County Committee as a defendant—to reflect implementation of the new single-member system. Id. at 5:10-12. Finally, Plaintiffs state that they do not oppose staying "Section 2 and related federal claims, while remanding to the state courts a determination of whether intervening actions by [Defendants] and the County Committee have proposed an adequate remedy" for their state law claims. Id. at 5:27-6:2.

*Defendants' Reply*

In their reply memorandum, Defendants reject Plaintiffs' assertion that the single-member system is a mere "remedial plan" and take the position that it is improper for Plaintiffs to "argue as if this case is in its remedial phase" because there has been no finding that the multi-member system was unlawful. Doc. No. 16 at 9:5-19. Similarly, Defendants argue that Plaintiffs fail to identify authority supporting the notion that "a newly adopted system, which hasn't been challenged, can be invalidated because of a moot challenge to [a] prior abolished system of elections." See id. at 11:15-18.

**LEGAL FRAMEWORK**

Article III of the Constitution limits federal courts to adjudicating actual, ongoing controversies between litigants, see Deakins v. Mohaghan, 484 U.S. 193, 199 (1988); U.S. Const. art. III, § 2, and "[i]t has long been settled that a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.' " Church of Scientology of California v. United States, 506 U.S. 9, 12 (1992) (quoting Mills v. Green, 159 U.S. 651, 653 (1895)). Generally, an action is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Lee v. Schmidt–Wenzel, 766 F.2d 1387, 1389 (9th Cir. 1985) (internal quotations and citations omitted). "The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted," Northwest Environmental Defense Center v. Gordon, 849 F.2d 1241, 1244 (9th Cir. 1988), and claims for

injunctive relief become moot when the challenged activity ceases if "subsequent events have made it clear that the alleged violations could not reasonably be expected to recur." Chinese for Affirmative Action v. Leguennec, 580 F.2d 1006, 1009 (9th Cir. 1978).

"When a case becomes moot, federal courts lose jurisdiction." S. Cal. All. of Publicly Owned Treatment Works v. EPA, 2015 WL 2358620, at *2 (E.D. Cal. May 15, 2015) (citing Church of Scientology, 506 U.S. at 12). Because mootness "pertain[s] to a federal court's subject-matter jurisdiction under Article III, [it is] properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000); see also Fed.R.Civ.P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

## DISCUSSION

Defendants cite several cases in support of their position that Plaintiffs' First Cause of Action for violation of Section 2 of the federal Voting Rights Act is mooted by the implementation of a single-member system earlier this year.

In *West v. Natchez, Mississippi*, for example, plaintiffs sought declaratory and injunctive relief based on allegations that a districting plan adopted by the City of Natchez, Mississippi violated Section 2 of the Voting Rights Act by diluting the voting strength of African American citizens. 2016 WL 1178771, at *1 (S.D. Miss. Mar. 24, 2016). A few months after the action was filed, Natchez adopted a redistricting ordinance that "undisputed[ly] … corrected the population deviations of the previous plan and created an additional majority-minority district." Id. at *1. Natchez argued that the redistricting ordinance rendered the case moot, while plaintiffs argued that the case was not moot under the "voluntarily cessation" doctrine and because attorney's fees and other recovery might be available in connection with the initial districting plan despite the redistricting ordinance. Id. The court dismissed the case as moot on findings that: (i) Natchez was entitled to the presumption that the redistricting ordinance was not "mere litigation posturing"; (ii) the complaint sought only "prospective injunctive and declaratory relief" with no claim for money damages or other retrospective relief; and (iii) even plaintiffs conceded that the new plan "cure[d] each of the alleged problems with the former plan." Id. at *3-*4.

In *Chestnut v. Merrill*, ten African American voters in Alabama filed an action in 2018 asserting that state law violated Section 2 of the Voting Rights Act "by 'packing' and 'cracking' African American voters between congressional districts to dilute African American voting strength." 446 F.Supp.3d 908, 911 (N.D. Ala. 2020). Further, plaintiffs contended that Section 2 required the creation of a second majority-minority district, given the size of the African American population in Alabama. Id. The Alabama Secretary of State argued in 2020 that plaintiffs' Section 2 claim was moot because Alabama was required to implement a new congressional districting plan after the 2020 census. Id. at 914. Plaintiffs took the position that declaratory judgment as to defects in the existing congressional districting plan could "prevent further dilution of Plaintiffs' voting strength" and otherwise "impact Alabama's 2021 redistricting." Id. at 915. The court dismissed the case as moot, finding that Section 2 cases are "inherently fact-intensive" and that any findings based on the existing plan would be "obsolete and of no import" as applied to redistricting in 2021. Id. at 918-19. Further, the court stated that "[t]he power to draw new congressional districts belongs to the Alabama Legislature" and that courts can only "analyze" and "remedy" legislative choices with respect to electoral districting where "those choices culminate in specific controversies that allow the courts to appropriately grant relief." Id. at 920.

In *City of Dallas v. United States*, the City of Dallas sought declaratory judgment on the validity of a voting plan for city council elections under the Voting Rights Act. 482 F.Supp. 183 (D.D.C. 1979). While the action was pending, the plan was repealed by city ordinance, a new plan was enacted, and Dallas sought dismissal for mootness. Id. at 184. Intervenors representing African American and Mexican American voters argued that the court should evaluate the new plan in the context of the existing action given certain commonalities between the initial plan and the new plan with respect to seat allocation. Id. A three-judge panel in the District of Columbia rejected intervenors' arguments, finding that "the controversy that previously existed [was] … non-existent" because the "original plan ha[d] been repealed" and "the City of Dallas [wa]s not attempting to implement the repealed plan." Id. at 185-86.

Finally, in *Ruiz v. City of Santa Maria*, Hispanic residents and registered voters of the City of Santa Maria challenged Santa Maria's at-large city council election system under Section 2 of

8

the Voting Rights Act, seeking instead a "district election system." 160 F.3d 543, 549-50 (9th Cir. 1998). While the case was pending, two Hispanic candidates were elected to the city council in a special election. Id. at 547. The district court dismissed the action as moot on a finding that the election of two Hispanic city council members precluded relief under tests applicable to Section 2 claims. Id. The Ninth Circuit reversed, finding that (despite the special election) there was a "present, live controversy" as to "whether the City's at-large election system impermissibly dilute[d] the votes of Hispanics," but also stated that "[the] lawsuit would be moot if, for example, [p]laintiffs had moved out of Santa Maria or the City had already adopted a district election system" to replace the existing at-large system. Id.

These cases differ from the case at bar in some respects. In *Natchez*, for example, the plaintiffs conceded that the new plan cured alleged problems with the prior plan. *Chestnut* and *City of Dallas* involved "preclearance" of voting procedures under Section 5 of the Voting Rights Act, which is not at issue here. And *Ruiz* did not involve implementation of a new voting system.[5]

Plaintiffs, however, offer no authority undercutting these opinions in any relevant respect, see Doc. No. 11 at 12:6-14:14, and the Court finds that the reasoning in the opinions is applicable here. Plaintiffs provide no basis to conclude (or even suspect) that Kern County will revert to the multi-person system at issue in the Complaint after this action is dismissed. See Natchez, 2016 WL 1178771 at *3-*4 (defendant city entitled to presumption that new redistricting ordinance was not "mere litigation posturing"); see also Sossamon v. Lone Star State of Tex., 560 F.3d 316, 325

---

[5] Defendants argue that the Ninth Circuit's statement that the *Ruiz* lawsuit would have been moot if Santa Maria had adopted a new election system is not dicta—and that it controls here—because the Ninth Circuit stated in *Miranda B. v. Kitzhaber* that "where a [Ninth Circuit] panel confronts an issue germane to the eventual resolution of [a] case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, *regardless of whether doing so is necessary in some strict logical sense*." Doc. No. 16 at 8:23-9:4 (quoting Miranda B. v. Kitzhaber, 328 F.3d 1181, 1186 (9th Cir. 2003)) (emphasis added by Defendants). *Miranda B.* also states, however, that the ruling in question (which involved waiver of Eleventh Amendment immunity) "reaffirmed … analysis set forth" in a prior case. Id. at 1186. Further, Defendants gloss over the parts of the *Miranda B.* statement about "reasoned consideration" and about being "germane" to resolution of a case. In *Ruiz*, adoption of a new election system was a counterfactual irrelevant to the disposition of the motion at bar. See Ruiz, 160 F.3d at 549. Further, *Ruiz* is devoid of analysis supporting the statement that adoption of a new election system would have mooted plaintiffs' claim, see id., as is the one cited case, which states only that the claims at issue there "might" have been "considered moot" if "subsequent events" had made it clear that alleged electoral violations "could not reasonably be expected to recur." See Chinese for Affirmative Action, 580 F.2d at 1009. In the Court's view, this falls short of the standard for "law of the circuit" set forth in *Miranda B*. Thus, *Ruiz* does not control disposition of this motion, although it obviously has weight for its implicit logic and as a concrete indication of the view the Ninth Circuit would likely take of mootness in this case.

(5th Cir. 2009) (stating that "government actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith" in determining whether cessation is permanent). Plaintiffs make no meaningful showing that findings as to the multi-member system (which was implemented more than a decade ago) could bear on claims arising from the PBVUSD's new single-member system, see Chestnut, 446 F.Supp.3d at 918-19 (finding that factual findings as to a prior plan would be "obsolete and of no import" as applied to a replacement plan); and regardless, it is plainly the new system—not the old system—at issue. See Doc. No. 11 at 5 (Plaintiffs taking issue with PBVUSD's new single-member system and seeking leave to recast this action to address its defects). Further, the Court agrees with Defendants that it would be an improper invasion of the legislative function for the Court to pass on the adequacy of the single-member system as a remedy for alleged defects in the multi-member system without (at a minimum) a timely predicate finding that the multi-member system was unlawful in some respect. See Chestnut, 446 F.Supp.3d at 920. And finally, it may be that a claim for money damages or other retrospective relief in connection with the multi-member system could be justiciable despite implementation of the single-member system, cf. Natchez, 2016 WL 1178771 at *3-*4, but Plaintiffs have not shown—or attempted to show—the existence of such a claim under federal law. Indeed, the question of retrospective relief is not even addressed in Plaintiffs' opposition brief.

The Court therefore finds that Plaintiffs' First Cause of Action under Section 2 of the Voter Rights Act is moot and must be dismissed for lack of subject matter jurisdiction. See Bradley v. Work, 154 F.3d 704, 710 (7th Cir. 1998) (finding that "change in statutory scheme" mooted challenge to prior system); Puerto Rican Legal Def. & Educ. Fund, Inc. v. Gantt, 796 F. Supp. 698, 700 (E.D.N.Y. 1992) (mooting challenge to a 34-district congressional plan that had been replaced by a 31-district congressional plan); cf. Diego v. City of Whittier California et al., Case No. BC517363 (L.A. Sup. Ct. Sept. 8, 2014) (finding that declaratory judgment claim involving an at-large voting process was mooted by amendment to city charter that established a new district-based system). Further, Plaintiff's Third Cause of Action under 42 U.S.C. § 1983 must be dismissed because it is derivative of Plaintiffs' moot Section 2 claim, and Plaintiffs' state

law claims, as set forth in the Second Cause of Action, must be dismissed because the Court lacks jurisdiction over either of Plaintiffs' federal claims. See 28 U.S.C. § 1367(a); Herman Fam. Revocable Tr. v. Teddy Bear, 254 F.3d 802, 806 (9th Cir. 2001) (discussing "requirement that [] supplemental state-law claims be dismissed where the district court had no underlying original jurisdiction").

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) will be granted and this action will be dismissed with prejudice in its entirety. As such, it is unnecessary for the Court to address arguments relating to Defendants' alternative motion for judgment on the pleadings.

## ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure (Doc. No. 8) is GRANTED;
2. This case is DISMISSED WITH PREJUDICE in its entirety;
3. The Clerk of Court is respectfully DIRECTED to CLOSE this case.

IT IS SO ORDERED.

Dated: December 7, 2022

_____
SENIOR DISTRICT JUDGE